IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:25-CV-01529-M

| | |
|---|---|
| **Michael L. Toon,**<br><br>Plaintiff,<br><br>v.<br><br>**Frank Bisignano,** Commissioner of Social Security,<br><br>Defendant. | **Memorandum & Recommendation** |

Plaintiff Michael Toon challenges an Administrative Law Judge's decision to deny his application for social security income. Toon claims that the ALJ made two errors in reaching that determination. First, the ALJ failed to account for all of Toon's non-exertional limitations when formulating his residual functional capacity (RFC). And second, she erred in evaluating the medical opinion evidence as it relates to Toon's mental limitations. Both Toon and Defendant Frank Bisignano, Commissioner of Social Security, seek a decision in their favor. D.E. 23, 25, 26.

After reviewing the parties' arguments, the undersigned has determined that the ALJ erred in her determination. The ALJ did not explain how simple tasks, instructions, and decisions with limited interactions and occasional workplace changes account for Toon's moderate limitations in maintaining concentration, persistence, or pace. But there is no flaw in the ALJ's consideration of the medical opinion evidence because the decision sets out how treatment records differed from the examiner's conclusions. So the undersigned recommends that the court grant Toon's request, deny Bisignano's request, and remand this matter to the Commissioner for further consideration.[1]

[1] The court has referred this matter to the undersigned for entry of a Memorandum and Recommendation. 28 U.S.C. § 636(b).

## I. Background

### A. Factual

Around the time of his November 2021 alleged disability onset, Toon reported that he was "doing well." Tr. at 24. Both physical and mental examinations yielded normal results. *Id.*

At an appointment four months later, Toon again stated that he was doing well and had normal physical and mental findings on exam. *Id.* That month, Toon went to the emergency department complaining of left wrist pain over the last few days that tracked his history of gout. *Id.* He had no flares in over a year despite no daily gout medication. *Id.* An exam found swelling, tenderness, diminished sensation and range of motion but intact strength. *Id.* Providers assessed acute gout of the left wrist. *Id*.

Toon returned to the ER three months later with right wrist pain for three days. *Id.* He acknowledged eating poorly before his symptoms started. *Id.* On examination, he had swelling, slight erythema, and diffuse tenderness with range of motion. *Id.* The diagnosis was acute gout of the right wrist. *Id.* A July 2022 x-ray of the right forearm revealed focal erosions of the ulnar styloid consistent with gout. *Id*.

Toon reported a recent gout flare in his right hand at an appointment two months later. *Id.* Providers noted normal findings on examination, including a normal gait. *Id.* He had similar symptoms at a November 2022 visit. *Id.* Swelling, tenderness, and decreased range of motion were observed in his left hand and wrist. Tr. at 24–25. And he had gout pain in his left foot. Tr. at 25. But providers noted normal musculoskeletal findings including normal range of motion. *Id.* And Toon had positive indicators on a depression screening. *Id.*

Around this time, behavioral health treatment notes reflect he had trouble with concentration and sleep along with fluctuations in appetite. *Id.* Toon reported crying spells, loss of interest, and a preference to be alone. *Id.*

Toon claimed to be doing well in May 2023. *Id.* An examination was within normal limits and noted a normal gait. *Id.* At a visit two months later, treatment notes reflect normal range of motion and a normal psychiatric assessment. *Id.* But in September, Toon reported that he continued to experience depression and negative thoughts, for which medication provided some relief. *Id.*

Dr. Roycia Lawrence performed a consultative evaluation in November 2023. Tr. at 25. Toon claimed to have right leg pain and weakness, which required him to constantly reposition himself and resulted in poor sleep. *Id.* With a cane, Toon displayed an antalgic, limping gait on examination. *Id.* Romberg testing yielded positive results, but he retained normal coordination. *Id.*

Toon had diminished strength in his left upper extremity but was otherwise normal. *Id.* He had no range of motion limitations in his back and straight leg raise testing produced negative results. *Id.* The right lower extremity was swollen, tender, and had reduced motion. *Id.*

Dr. Lawrence noted that Toon could lift, carry, handle, and manipulate light objects. *Id.* He had no trouble getting on and off the exam table, but Toon had difficulty tandem walking and walking on his heels and toes. Tr. at 25–26. And he could not hop. Tr. at 26.

Dr. Lawrence concluded that Toon could lift no more than 20 pounds. *Id.* He could sit for 30 minutes at a time for a total of six hours in an eight-hour workday. *Id.* Toon could stand or walk for 15 minutes for a total of one-hour over an eight-hour workday. *Id.* And he needed a cane to walk more than five to seven feet. *Id.*

In January 2024, C. Craig Farmer, Ph.D., conducted a consultative psychological evaluation. Tr. at 26. Toon drove himself to the appointment and used a cane. *Id.* He reported irritability and appeared anxious and depressed but had a full affect. *Id.*

Although he could not prepare a full meal, Toon made simple meals like sandwiches. *Id.* He is limited in his ability to do housework and relies on his cousin to do most of it. *Id.* Toon reported that he could not stand or walk for extended periods and fell the week before. *Id.* He noted that his primary issues are fatigue, weakness, right leg pain, and being a fall risk. *Id*.

Toon stays home most of the time and has no social life. *Id.* He claimed to have experienced paranoia and delusions in a work environment. *Id.* Conflicts with coworkers have resulted in his suspension or dismissal. *Id.* Toon also stated that he has auditory hallucinations and sleep disturbances. Tr. at 27.

A mental status examination found a depressed mood, goal directed conversation, and clear thought processes. Tr. at 26–27. He had adequate short term and remote memory with impaired immediate recall. Tr. at 27.

Dr. Farmer assessed schizoaffective disorder. *Id.* He determined that Toon could understand, retain, and follow simple instructions but he would have difficulty with more complex tasks. *Id.* Toon's ability to sustain attention and concentration was limited by his easy distractibility and interfered with his ability to complete responsibilities. *Id.* Psychosis caused Toon to be paranoid from delusions and auditory hallucinations, which limited his ability to tolerate stress and interact appropriately with coworkers and supervisors. *Id*.

Treatment notes from May 2024 reflect that Toon was compliant with his HIV medication and was advised to limit his calories due to his obesity. *Id.* The next month, he had no new

complaints and reported feeling well. *Id.* In September 2024, Toon was again feeling well and had no new complaints. *Id.* A physical examination was within normal limits. *Id*.

At the initial level, a state agency psychological consultant determined that Toon had no severe mental health impairment and no limitations in the four broad areas of mental functioning. Tr. at 28. On reconsideration, another state agency psychological consultant concluded that Toon's depression was not severe. *Id.* But he had moderate limitations in adapting or managing himself. *Id.*

Toon's depression symptoms improved with Prozac. *Id.* Records from a recent therapy visit pointed to situational factors as the source of his depression. *Id.* And the overall record reflected mostly normal mental status evaluations. *Id.*

At the hearing, Toon stated that he stopped working because of his symptoms. Tr. at 23. He has inflammation from arthritis and claims he has used a cane since 2021 because he is at risk for falls. *Id.* Gout affects joints in his hands, knees, and feet, causing pain that returns 12 hours after taking medication. *Id.* It limits his ability to grip a steering wheel. *Id.* Toon has gout flares about three times a week. *Id.*

Toon testified that he experiences weakness due to HIV. *Id.* He walks with a slight limp. *Id.* About once a week, Toon has unbearable back spasms that cause him to cry. *Id.* Toon has trouble reaching overhead and bending to get dressed, so his cousin helps him. *Id.* Toon estimated he could stand for 15 minutes. *Id*.

Toon's cousin provided a Third-Party Function Report. Tr. at 28. It noted his issues with lifting, standing, walking, and climbing stairs. *Id.* Toon's leg gives out and he experiences fatigue. *Id.*

### B. Procedural

In 2022, Toon applied for disability insurance benefits and supplemental security income. In both applications, he alleged a disability that began the year before. After the Social Security Administration denied his claim at the initial level and upon reconsideration, Toon appeared before an ALJ for a telephonic hearing to determine whether he was entitled to benefits. An ALJ issued a favorable decision finding Toon disabled. Tr. at 142–47. The Appeals Council remanded the matter to the ALJ to further determine Toon's residual functional capacity (RFC). Tr. at 152–57.

A second telephonic hearing was conducted by an ALJ who determined that Toon had no right to benefits because he was not disabled. Tr. at 17–30.

The ALJ found that Toon lived with several severe impairments. Among these were obesity, gout, hypertension, human immunodeficiency virus (HIV), chronic stage III kidney disease, and major depressive disorder. Tr. at 20. The ALJ also found that Toon's impairments, either alone or in combination, did not meet or equal a Listing impairment. *Id.*

Next, the ALJ determined that Toon had the residual functional capacity (RFC) to perform light work with other limitations. Tr. at 22–23. He must be allowed to alternate positions for 1–2 minutes after 30 minutes of standing or walking. *Id.* Toon can occasionally climb and balance and he can frequently stoop, kneel, crouch, and crawl. *Id.* And he can work around moving, mechanical parts occasionally. *Id.*

Toon can perform simple tasks and instructions and make simple, work-related decisions. *Id.* He can frequently interact with supervisors and occasionally interact with coworkers and the public. *Id.* And Toon can tolerate occasional changes to this type of simple work. *Id.*

Then the ALJ concluded that Toon could not perform his past work as a shipping clerk or industrial truck operator. Tr. at 28. But considering his age, education, work experience, and RFC,

the ALJ found that other jobs existed in significant numbers in the national economy that Toon could perform. Tr. at 29. These include swatch clerk, delivery marker, and gate attendant. *Id.* These findings led the ALJ to conclude that Toon was not disabled. Tr. at 30.

After the Appeals Council declined review, Toon commenced this action in September 2025. D.E. 1. Both parties seek the court to issue a decision in their favor. D.E. 23, 25, 26.

## II. Analysis

Toon contends that the ALJ omitted restrictions from the RFC to sufficiently account for his moderate limitations in concentration, persistence, and pace. The residual functional capacity (RFC) determination includes limitations related to Toon's deficits in mental functioning but excludes any restrictions that address his ability to stay on task. Nor did the ALJ explain that Toon's symptoms resulted in no limitations in maintaining pace. So the RFC runs afoul of controlling case law. This error forms grounds to remand the matter.

When considering the consultative examiner's opinion, the ALJ evaluated both its supportability and consistency. A review of the disability decision reveals how its conclusions departed from other treatment records. So contrary to Toon's position, the ALJ did not overlook the consistency factor. Nor did the ALJ fail to reconcile the opinion with the RFC regarding Toon's ability to reach. Any manipulative limitations resulting from using an assistive device, which the RFC did not include, were unnecessary. So the undersigned finds no error on this issue.

### A. Standard for Review of the Commissioner's Final Decision

When a claimant appeals the Commissioner's final decision, the district court considers whether, based on the entire administrative record, there is substantial evidence to support the Commissioner's findings. 42 U.S.C. § 405(g); *Richardson* v. *Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a

particular conclusion." *Shively* v. *Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (quoting *Laws* v. *Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). The court must affirm the Commissioner's decision if it is supported by substantial evidence. *Smith* v. *Chater*, 99 F.3d 635, 638 (4th Cir. 1996).

**B. Standard for Evaluating Disability**

Under the Social Security Act, a claimant is disabled if they are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). ALJs use a five-step, sequential process when considering disability claims. 20 C.F.R. § 404.1520.

First, at step one, the ALJ considers whether the claimant is engaged in substantial gainful activity. *Id.* § 404.1520(a)(4)(i). If so, the claim is denied. *Id*.

Then, at step two, the ALJ looks at whether the claimant has a severe impairment or combination of impairments that significantly limit him from performing basic work activities. *Id.* § 404.1520(a)(4)(ii). If not, the claim is denied. *Id*.

Next, at step three, the ALJ compares the claimant's impairments to those in the Listing of Impairments. *Id.* § 404.1520(a)(4)(iii). If the impairment appears in the Listing or if it is equal to a listed impairment, the ALJ must find that the claimant is disabled. *Id.*

But if the ALJ concludes that a presumption of disability is unwarranted, the ALJ must then assess the claimant's residual functional capacity ("RFC"). A claimant's RFC "is the most work-related activity the claimant can do despite all of her medically determinable impairments and the limitations they cause." *Arakas* v. *Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 90 (4th Cir. 2020). Determining the RFC requires the ALJ to "first identify the claimant's 'functional

limitations or restrictions' and assess the claimant's 'ability to do sustained work-related' activities 'on a regular and continuing basis'—i.e., '8 hours a day, for 5 days a week, or an equivalent work schedule.'" *Id.* (quoting SSR 96–8p, 1996 WL 374184, at *1 (July 2, 1996)). The ALJ will then "express the claimant's Residual Functional Capacity 'in terms of the exertional levels of work[:] sedentary, light, medium, heavy, and very heavy.'" *Id.* (alteration in original).

After assessing the claimant's RFC, the ALJ, at step four, considers whether the claimant can perform his past work despite his impairments. *Id.* § 404.1520(a)(4)(iv). If the claimant can, the ALJ will deny the claim. *Id.* If the claimant cannot, the analysis moves on to step five.

This final step considers whether the claimant, based on his age, work experience, and RFC, can perform other substantial gainful work. *Id.* § 404.1520(a)(4)(v). If so, the claimant is not disabled; if so, they are considered disabled. *Id.*

The burden of proof shifts between the Commissioner and the claimant during the evaluation process. The claimant has the burden of proof on the first four steps, but the Commissioner bears it on the last one. *Pass* v. *Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).

### C. Residual Functional Capacity

Toon contends that the RFC fails to adequately address his moderate limitations in concentrating, persisting, or maintaining pace. The Commissioner argues that RFC dealt with such difficulties by limiting Toon to simple tasks, instructions, and decisions. The undersigned finds that the non-exertional limitations fail to address all of his difficulties in this functional domain. Because the RFC insufficiently accounts for Toon's deficits or explains why no other restrictions are needed, the undersigned cannot conclude that substantial evidence supports the RFC determination.

The RFC is a determination, based on all the relevant medical and non-medical evidence, of what a claimant can still do despite her impairments; the assessment of a claimant's RFC is the responsibility of the ALJ. *See* 20 C.F.R. §§ 404.1520, 404.1545, 404.1546; Social Security Ruling ("SSR") 96–8p, 1996 WL 374184, at *2. If more than one impairment is present, the ALJ must consider all medically determinable impairments, including medically determinable impairments that are not "severe," when determining the claimant's RFC. *Id.* §§ 404.1545(a), 416.945(a). The ALJ must also consider the combined effect of all impairments regardless of whether any such impairment, if considered separately, would be of sufficient severity. *Id.* § 404.1523; *see Walker* v. *Bowen*, 889 F.2d 47, 50 (4th Cir. 1989) ("[I]n evaluating the effect[] of various impairments upon a disability benefit claimant, the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them.").

The ALJ must provide "findings and determinations sufficiently articulated to permit meaningful judicial review." *DeLoatche* v. *Heckler*, 715 F.2d 148, 150 (4th Cir. 1983); *see also Wyatt* v. *Bowen*, 887 F.2d 1082, 1989 WL 117940, at *4 (4th Cir. 1989) (per curiam). The ALJ's RFC determination "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g. daily activities, observations)." *Mascio* v. *Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (quoting SSR 96–8p). Furthermore, "[t]he record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." *Radford* v. *Colvin,* 734 F.3d 288, 295 (4th Cir. 2013). Fourth Circuit precedent "makes it clear that it is not [the court's] role to speculate as to how the ALJ applied the law to [her] findings or to hypothesize the ALJ's justifications that would perhaps find support in the record. *Fox* v. *Colvin*, 632 F. App'x 750, 755 (4th Cir. 2015).

Social Security Ruling 96–8p explains how adjudicators should assess residual functional capacity. The Ruling instructs that the residual functional capacity "assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions" listed in the regulations. "Only after that may [residual functional capacity] be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96–8p. The Ruling further explains that the residual functional capacity "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.*

There is no "per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis[.]" *Mascio*, 780 F.3d at 636. But "[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Id.* (quoting *Cichocki* v. *Astrue*, 729 F.3d 172, 177 (2d Cir. 2013)). The function-by-function requirement can be satisfied by reference to a properly conducted analysis by a state agency consultant. *See, e.g.*, *Linares* v. *Colvin*, No. 5:14-CV-00129, 2015 WL 4389533, at *3 (W.D.N.C. July 17, 2015) ("Because the ALJ based his RFC finding, in part, on the function-by-function analysis of the State agency consultant, the ALJ's function-by-function analysis complied with [Soc. Sec. Ruling] 96–8p." (citing *Lemken* v. *Astrue*, No. 5:07-CV-33-RLV-DCK, 2010 WL 5057130, at *8 (W.D.N.C. July 26, 2010))).

In *Mascio*, the Fourth Circuit found that a limitation to simple, routine tasks or unskilled work may fail to address a moderate limitation in concentration, persistence, or pace. 780 F.3d at 638. The Fourth Circuit "agree[d] with other circuits that an ALJ does not account for a claimant's

limitation in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work" because "the ability to perform simple tasks differs from the ability to stay on task." *Id.* (quotation omitted). Because the ALJ failed to explain why the plaintiff's "moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation in [plaintiff's] residual functional capacity," the Fourth Circuit remanded *Mascio*. *Id*; *see also Shinaberry* v. *Saul*, 952 F.3d 113, 122 (4th Cir. 2020) (holding that ALJ decision comported with *Mascio* where the ALJ explained why evidence supported mental limitation to simple, routine, repetitive tasks and included limitations in the hypothetical questions).

Although an ALJ's findings at step three may not require any added limitations for concentration, persistence, or pace in the RFC, the ALJ must at least provide an adequate explanation in the decision to allow the court to conduct meaningful review of the RFC determination. *See Scruggs* v. *Colvin*, No. 3:14-CV-466, 2015 WL 2250890, at *5 (W.D.N.C. May 13, 2015); *Reinhardt* v. *Colvin*, No. 3:14-CV-00488, 2015 WL 1756480, at *3 (W.D.N.C. Apr. 17, 2015).

The ALJ found that Toon could perform light work with other limitations. Tr. at. 22–23. Along with postural and environmental restrictions and an allowance to alternate positions, the ALJ determined that Toon could perform simple tasks and instructions and make simple, work-related decisions. *Id.* And he could have limited interactions and tolerate occasional changes to the type of simple work he could perform. *Id.*

Toon claims that the RFC fails to adequately address his limitations in concentration, persistence, or pace that the ALJ identified at step three. He asserts that the restrictions assigned do not comply with Fourth Circuit case law because they are inadequate to address moderate

limitations in concentration, persistence, or pace. And the ALJ did not conclude that his difficulties in that functional domain caused no non-exertional restrictions.

The Commissioner contends that the evidence supports the limitations the ALJ has determined. But his argument misses the mark. Whether the evidence supports the limitations set out in the RFC does not compel a conclusion that additional restrictions are unwarranted.

The undersigned finds that simple tasks, instructions, and decisions, without more, fails to address moderate limitations in concentration, persistence, or pace. The other non-exertional limitations included in the RFC do not deal with this mental functioning domain. And the ALJ did not find that Toon's deficits resulted in no functional loss. So remand is warranted.

At step three, the ALJ considered the four broad categories of mental functioning. Tr. at 21–22. She found that Toon had moderate limitations in all mental function domains, including concentrating, persisting, and maintaining pace. *Id.* The ALJ noted Toon's allegations of difficulties with concentration and focus, and he had trouble completing tasks. Tr. at 21. But he prepared meals, watched TV, and handled his own medical care. *Id.* And no records mentioned he was distractible. *Id.*

Because the ALJ determined that Toon had moderate difficulties in his ability to maintain concentration, persistence, or pace, the ALJ needed to either account for that limitation in the RFC or explain why he required no restrictions. *Mascio*, 780 F.3d at 638. As noted, the RFC determined that Toon could sustain concentration, persistence, and pace to perform simple tasks and instructions and make simple, work-related decisions. Tr. at 22–23. He could have limited interactions and occasional work changes. *Id.*

Limiting Toon to work involving only simple tasks and instructions and making simple, work-related decisions addresses his ability to understand, remember, and apply information. *See*

*Smith* v. *Kijakazi*, No 5:20-CV-584-M, 2022 WL 2443466, at *5 (E.D.N.C. May 11, 2022); 20 C.F.R. Pt. 404, Subpt. P, § 12.00E(1) (stating that this domain involves understanding instructions and following instructions to carry out a task as well as using reason and judgment to make work-related decisions). Restrictions on dealing with coworkers, supervisors, and the public address the domain of interacting with others. 20 C.F.R. Pt. 404, Subpt. P, § 12.00E(2). And limiting workplace changes related to adapting or managing oneself. *See Patrick* v. *Bisignano*, No. 4:24-CV-00097-RN, 2025 WL 2637664, at *12 (E.D.N.C. Sept. 12, 2025) (noting that adjusting to changes is a competency of adapting or managing oneself) (citing 20 C.F.R. Pt. 404, Subpt. P, § 12.00E(4)).

Courts in the Fourth Circuit have determined that limitations similar to those in Toon's RFC fail to sufficiently account for moderate limitations in concentration, persistence, or pace found at step three. *See, e.g.*, *Joshua H.* v. *Comm'r of Soc. Sec. Admin.,* No. 4:25-CV-00002, 2026 WL 445711, at *8 (W.D. Va. Feb. 17, 2026) (remanding case where claimant had moderate limitations in concentration, persistence, and pace and RFC limited him to simple, repetitive work with limited interactions and occasional changes because the ALJ did not explain how the restrictions addressed claimant's deficits); *Robert S.* v. *Saul*, No. 5:19-CV-00055, 2021 WL 276170, at *5 (W.D. Va. Jan. 27, 2021) (concluding that limitations for simple, routine, repetitive tasks and simple, work-related decisions did not account for moderate limitations in CPP); *Richardson* v. *Saul*, No. 4:19-CV-00128-FL, 2020 WL 3816317, at *5 (E.D.N.C. June 9, 2020) (listing cases where courts remanded because the ALJ did not address moderate CPP limitations in the RFC), *adopted by* 2020 WL 3799344 (E.D.N.C. July 7, 2020); *Turner* v. *Saul*, No. 5:19-CV-00190, 2020 WL 3866669, at *6–7 (E.D.N.C. June 9, 2020) (remanding because limitations for simple instructions, tasks, and decisions with limited interactions were insufficient to address

moderate limitation in CPP); *Phillips* v. *Berryhill*, No. 9:17-CV-01945, 2018 WL 6604228, at *4 (D.S.C. Dec. 17, 2018) (finding limitations to simple, routine, repetitive tasks, simple work-related instructions and decisions, few workplace changes, and occasional interactions do not address a claimant's limitations in concentration, persistence, or pace and his ability to work a full day).

Consequently, the undersigned finds that the RFC did not adequately address his moderate limitations found at step three. And in determining the RFC, the ALJ did not conclude that the step three findings caused no functional limitations.

With neither sufficient restrictions that address Toon's ability to remain on-task over an eight-hour workday nor an explanation why his moderate limitations in concentration, persistence, and pace required no such limitation, the RFC runs afoul of controlling case law. So remand is warranted on this issue.

**D. Medical Opinion Evidence**

Toon also contends that the RFC is flawed because it omits additional restrictions assessed by the consultative examiner and that the ALJ failed to offer grounds to reject additional limitations. The Commissioner argues that the RFC accounts for all of Toon's well-supported limitations. The undersigned finds that the ALJ offered a reasonable explanation for excluding other limitations assessed in the medical opinion.

The Regulations direct the ALJ to consider each medical opinion in the record. 20 C.F.R. §§ 404.1520c, 416.920c. A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the [following] abilities ...

> (A) Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);

> (B) Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;
>
> (C) Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and
>
> (D) Your ability to adapt to environmental conditions, such as temperature extremes or fumes.

*Id*. §§ 404.1513(a)(2), 416.913(a)(2).

The Regulations provide that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [claimant's] medical sources." *Id.* §§ 404.1520c(a), 416.920c(a). Instead, the ALJ must evaluate each medical opinion and articulate the "persuasiveness" of all medical opinions by considering five factors:

> (1) supportability, meaning that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions or prior administrative medical finding(s) will be"; (2) consistency, meaning that the more consistent an opinion is with other evidence in the record, the more persuasive the medical opinion will be; (3) the medical source's relationship with the claimant, which considers the length of the treating relationship, frequency of examinations, purpose of the treating relationship, extent of the treatment relationship, and whether the medical source examined the claimant; (4) specialization, meaning that "a medical source who has received advanced education and training to become a specialist may be more persuasive"; and (5) other factors that tend to support or contradict a medical opinion."

*Id*. §§ 404.1520c(c)(1)–(5), 416.920c(c)(1)–(5).

Supportability and consistency are the "most important" factors, and the ALJ must discuss how they considered these factors in the written opinion. *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2).

The ALJ may explain their consideration of the other factors but need only do so when contrary medical opinions are equally persuasive in terms of both supportability and consistency. *Id.* §§ 404.1520c(b)(3), 416.920c(b)(3). In that situation, the ALJ must then articulate the remaining factors and their application to the persuasiveness of the medical opinion. *Id.*

The Regulations require the ALJ to "articulate in [her] determination or decision how persuasive [she] find[s] all of the medical opinions and all of the prior administrative medical findings in [the] case record." *Id.* §§ 404.1520c(b), 416.920c(b). But when a medical source provides multiple opinions, the ALJ may use a single analysis to evaluate all the opinions from a single source, and the ALJ is "not required to articulate how [she] considered each medical opinion or prior administrative medical finding from one medical source individually." *Id.*

Resolving conflicting evidence with reasonable explanation is an exercise that falls within the ALJ's responsibility and is outside the court's scope of review. *See Mascio*, 780 F.3d at 637–40. It is not the court's "role to speculate as to how the ALJ applied the law to its findings or to hypothesize the ALJ's justifications that would perhaps find support in the record." *Fox*, 632 F. App'x at 755. The ALJ's opinion contains internal unresolved conflicts and creates confusion over whether substantial evidence supports the RFC determination. *See Elkins* v. *Saul*, No. 4:20-CV-01369, 2021 WL 1884747, at *12 (remanding when the court was "left to guess" about how the ALJ assigned weight to a medical opinion where there was an internal inconsistency between the ALJ's discussion of the medical opinion and the RFC).

An ALJ need not adopt all the findings in a medical opinion he deems persuasive. *See* 20 C.F.R. §§ 404.1520c(a), 416.920c(a) (noting that an ALJ need not defer to any medical opinion or prior administrative finding); *Turner* v. *Comm'r of Soc. Sec.,* No. 23–1760, 2024 WL 2764722, at *5 (4th Cir. May 30, 2024) ("ALJs are not required to accept all components of . . . a claimant's

limitations just because the ALJ finds them to be generally persuasive.") (citing *Thomas* v. *Berryhill*, 916 F.3d 307, 312 (4th Cir. 2019)).

But an ALJ cannot assign persuasive value to a medical opinion without addressing material conflicts between that opinion and the RFC. *Ezzell* v. *Berryhill*, 688 F. App'x 199, 201 (4th Cir. 2017). "[A]n ALJ cannot implicitly reject portions of a doctor's opinion [that the ALJ found persuasive] that are inconsistent with her RFC" absent adequate explanation of her reasoning. *Adams* v. *Comm'r of Soc. Sec.*, No. 3:20-CV-00224-RJC, 2022 WL 634213, at *3 (W.D.N.C. Mar. 3, 2022); *Clark* v. *Berryhill*, No. 5:17-CV-143-DCK, 2018 WL 3014408, at *5 (W.D.N.C. June 15, 2018). An ALJ's explanation of why he rejects a limitation in an opinion found credible must allow a reviewing court to trace his reasoning. *See Saunders* v. *O'Malley,* No. 5:23-CV-48-RJ, 2024 WL 1116972, at *4 (E.D.N.C. Mar. 14, 2024) (finding remand required where ALJ failed to explain why he rejected a limitation to short instructions, despite finding the state agency psychologists' findings to be persuasive, given that limitation conflicted with jobs ALJ found claimant could perform); *Alonna A.* v. *Kijakazi*, No. CV 22–3115-CDA, 2023 WL 8373378, at *4 (D. Md. Dec. 1, 2023) (finding no logical bridge between the evidence and the RFC where the ALJ failed to explain why the limitations opined by sources whose opinions were found to be persuasive were not fully incorporated into the RFC) (citing *Woods* v. *Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018)).

The RFC determination provides that Toon can meet the demands associated with light work—sitting for six hours and standing or walking for six hours in an eight-hour workday—with the option to alternate positions every 30 minutes. Tr. at 22–23. He could lift or carry up to 20 pounds on occasion, with frequent lifting or carrying up to ten pounds. *Id.* And Toon could frequently stoop and crouch. *Id.*

Dr. Lawrence, the consultative examiner, found that Toon's instability and weakness from myopathy and neuropathy, as well as the side effects of his medication, limited his functioning. Tr. at 1424. Dr. Lawrence determined that Toon could frequently lift and carry up to 20 pounds. Tr. at 1425. Because he was unsteady and needed a cane, he could only use one hand to carry items. *Id.* She also found that he could sit and/or walk for fifteen minutes at a time for a total of one hour in an eight-hour workday. *Id.* He needed a cane to walk more than seven feet. *Id.* Toon could sit for 30 minutes at a time for up to six hours in an eight-hour workday. *Id.* And he would have trouble stooping and crouching. *Id.* at 1424.

The ALJ found this assessment unpersuasive. Tr. at 26. She noted that Dr. Lawrence's examination supported her findings, noting Toon's unsteadiness without a cane and that using a cane would limit his ability to carry and manipulate objects. *Id.* But the ALJ concluded that Dr. Lawrence's opinion was inconsistent because the treating records did not indicate that Toon used a cane. *Id.* They also revealed that he had only isolated instances of hand or gait abnormalities during gout flares. *Id.* And the overall record showed that Toon's symptoms were well-controlled with medication compliance. *Id.*

**1. Consistency.**

Toon argues that the ALJ failed to properly consider the consistency of Dr. Lawrence's assessment. He faults the ALJ for failing to identify specific record entries that cast doubt on Dr. Lawrence's findings. The Commissioner contends, and the undersigned agrees, that the decision discloses the discrepancies between Dr. Lawrence's conclusions and other evidence

Toon maintains that the ALJ ignored Dr. Lawrence's examination findings. They reflect swelling, tenderness, reduced strength and range of motion. Toon had a slow, antalgic gait, walked with a cane, and had trouble with squatting, hopping, and performing the heel/toe walk.

The "consistency" of a medical opinion means "the extent to which the opinion is consistent with the evidence from other medical sources and nonmedical sources in the claim." *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844–01, 5853, 2017 WL 168819 (Jan. 18, 2017). "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

An examiner's own findings inform the supportability, not consistency, of their opinion. *See Kanjuette C.* v. *Bisignano*, 819 F. Supp. 3d 403, 414 (D. Md. 2026) ("Strictly speaking, 'supportability' concerns an opinion's reference to diagnostic techniques, data collection procedures/analysis, and other objective medical evidence.") (citation omitted); *Ernest M.* v. *O'Malley*, No. 9:23-CV-00388-MHC, 2024 WL 6956098, at *4 (D.S.C. Mar. 15, 2024) ("The supportability factor looks inward—directing an ALJ to examine: (1) the extent to which the objective medical evidence presented by the medical source supports that medical source's opinion; and (2) whether the medical source supports the opinion with explanation. Conversely, the consistency factor looks outward—directing an ALJ to evaluate a medical source's opinion in comparison to other evidence in the record."). And the ALJ found that the opinion was supported by Dr. Lawrence's examination. Tr. at 26.

What's more, a review of the disability decision indicates how the opinion departed from other evidence. In November 2021, Toon said he was "doing well" and an examination noted normal findings, including his gait. Tr. at 24. Four months later, he again displayed a normal gait with no remarkable findings noted. *Id.* Later that month, Toon acknowledged he did not take his

gout medication but had not experienced a flare in over a year. *Id.* Toon suffered a gout flare in June 2022 but conceded he had eaten poorly. *Id.*

Records from May 2023 show that Toon was doing well and walked with a normal gait. Tr. at 25. And two months later, an examination revealed no remarkable findings and noted his normal range of motion. *Id.* The evidence also discloses that Toon was feeling well, reporting more activity by walking, and had a normal physical exam in June 2024. Tr. at 26. Similar results were noted three months later. *Id.*

The ALJ noted that Toon presented with a cane at the consultative psychological evaluation in January 2024. Tr. at 26. But it appears that no other records indicated Toon used a cane. So the ALJ would not need to identify specific entries.

Although Toon asserts that the ALJ should have endorsed all of Dr. Lawrence's limitations, he identifies no evidence that the ALJ disregarded. Instead, he challenges how the ALJ evaluated the evidence. Toon's argument is thus one of disagreement, not error, in how the ALJ considered the evidence. It is not the role of the reviewing court to weigh evidence or make findings faced with conflicting evidence. *See Johnson* v. *Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (reviewing court should not seek to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the ALJ). And the court should decline his invitation to reconsider the evidence. *See Johnson*, 434 F.3d at 653 (observing that a reviewing court should not substitute its judgment for that of the ALJ).

The undersigned finds that the ALJ properly evaluated the consistency of Dr. Lawrence's assessment. So the court should reject Toon's argument on this issue.

### 2. Reaching

Toon also maintains that the ALJ failed to consider the effects of Toon's conditions and medication on his ability to perform certain movements. Dr. Lawrence stated that "[t]here are no manipulative limitations in reaching, handling, feeling, grasping, or fingering." Tr. at 1424. But in a form assessing his physical work-related abilities, Dr. Lawrence checked boxes indicating that he could occasionally reach bilaterally. Tr. at 1427. She stated that if he were standing, one hand would be occupied by the cane. *Id.*[2]

It thus appears that Dr. Lawrence attached any reaching limitations on Toon's use of a cane. But the ALJ did not incorporate the use of an assistive device into the RFC determination. Consequently, reaching restrictions related to the use of an assistive device would not be needed where Toon required no assistive device that would limit the availability of one of his hands.[3]

In sum, the undersigned finds that the ALJ did not fail to reconcile the RFC with Dr. Lawrence's findings about Toon's ability to reach. And as discussed above, the record contained only isolated instances of difficulty with his hands during gout flares.

Finding no error in the consideration of the consultative examiner's assessment, and providing sound reasons to reject her findings, Toon's argument on this issue lacks merit. So the undersigned recommends that the district court deny Toon relief on this issue.

---

[2] This may imply that Toon had no reaching restrictions if he were seated and thus not using one hand to hold a cane.

[3] Any argument that the reaching limitations were not conditioned on the use of an assistive device would render Dr. Lawrence's opinion internally inconsistent, having found both that Toon had no manipulative limitations but then assigning such restrictions. And an ALJ may properly conclude that such an opinion lacks persuasive value. *See Clifford* v. *Apfel*, 227 F.3d 863, 871 (7th Cir. 2000) (explaining that internal inconsistencies may provide good cause to assign less value to a physician's opinion); *Knight* v. *Chater*, 55 F.3d 309, 314 (7th Cir. 1995) ("Medical evidence may be discounted if it is internally inconsistent or inconsistent with other evidence."); *Michael E.* v. *Bisignano*, No. 2:24-CV-568, 2025 WL 3500616, at *3 (E.D. Va. Sept. 12, 2025); *Manuel A.* v. *Kijakazi*, No. CV 22-2739-BAH, 2023 WL 4664732, at *6 (D. Md. July 20, 2023) (affirming ALJ's decision that considered a medical opinion unpersuasive where it was internally inconsistent).

## III. Conclusion

For all these reasons, the undersigned recommends that the court grant Toon's request for relief (D.E. 23, 26), deny Bisignano's request for relief (D.E. 25), and remand this matter to the Commissioner for further consideration.

The Clerk of Court must serve a copy of this Memorandum and Recommendation (M&R) on each party who has appeared in this action. Any party may file a written objection to the M&R within 14 days from the date the Clerk serves it on them. The objection must specifically note the portion of the M&R that the party objects to and the reasons for their objection. Any other party may respond to the objection within 14 days from the date the objecting party serves it on them. The district judge will review the objection and make their own determination about the matter that is the subject of the objection. If a party does not file a timely written objection, the party will have forfeited their ability to have the M&R (or a later decision based on the M&R) reviewed by the Court of Appeals.

Dated: August 11, 2026

Robert T Numbers II

Robert T. Numbers, II
United States Magistrate Judge